UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELINDA J. C.[1],

                Plaintiff,

v.                                                    CASE # 19-cv-01618

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LEWIS L. SCHWARTZ, PLLC<br>  Counsel for Plaintiff<br>1231 Delaware Ave<br>Suite 103<br>Buffalo, NY 14209 | LEWIS L. SCHWARTZ, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | ARIELLA RENEE ZOLTAN, ESQ.<br>HEATHER SERTIAL, ESQ.<br>HEETANO SHAMSOONDAR,<br>  ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

### I.     RELEVANT BACKGROUND

#### A.     Factual Background

Plaintiff was born on May 6, 1963 and has a high school education. (Tr. 176, 38). Generally, plaintiff's alleged disability consists of bipolar disorder and attention deficit hyperactivity disorder (ADHD). (Tr. 181). Her alleged onset date of disability is November 15, 2013. (Tr. 176). Her date last insured was December 31, 2013. (Tr. 176).

#### B.     Procedural History

On April 13, 2012, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 69-70). Plaintiff's applications were initially denied, and she did not appeal the denials. (Tr. 89-96).

On February 2, 2016, plaintiff protectively filed both SSD and SSI applications alleging a disability onset date of November 15, 2013. (Tr. 60, 156-164). Plaintiff's applications were denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On June 29, 2018, plaintiff appeared before the ALJ, Paul Georger. (Tr. 24-48). On September 5, 2018, ALJ Georger issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 13-31). Thereafter, plaintiff timely sought judicial review in this Court.

#### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 15, 2013.

2. The claimant has not engaged in substantial gainful activity since November 15, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.).*

3. The claimant has the following severe impairments: bipolar disorder, depressive disorder and chronic obstructive pulmonary disease (COPD). (20 CFR 44.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to performing simple, routine and repetitive tasks, but not at a production rate pace (e.g. assembly-line work). She further is limited to simple work related decisions. She could occasionally respond appropriately to coworkers. She could occasionally deal with changes in a work setting. The claimant further is limited to occasional exposure to dust, odors, fumes, and pulmonary irritants and occasional exposure to humidity and wetness, and occasional exposure to extreme cold and extreme heat.

6. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 6, 1963 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material because using the Medical-Vocational Rules as a framework supports that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-27).

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes four arguments in support of her motion for judgment on the pleadings. First, plaintiff argues the ALJ erred in failing to properly weigh the opinion of the state agency review psychologist Dr. Echrvarria. Second, the ALJ improperly weighed the opinion from physician's assistant Alicia Snow. Third, remand is required because the ALJ failed to develop the record. Lastly, the ALJ erred in failing to consider a closed period of disability. (Dkt. No. 12 at 1 [Pl.'s Mem. of Law]).

### B.     Defendant's Arguments

Defendant responded to each of plaintiff's arguments. First, defendant asserts the ALJ properly considered the totality of the evidence in the record in assessing plaintiff's RFC and plaintiff did not meet her burden of proving the ALJ erred in weighing Dr. Echevarria's opinion. (Dkt. No. 16 at 7, 9 [Def.'s Mem. of Law]). Second, the ALJ properly gave great weight to the opinion from plaintiff's treating physician assistant because it was well-supported by evidence of treatment and functioning. (*Id*. at 15). Third, the ALJ appropriately developed the record and had sufficient evidence to evaluate plaintiff's claim. (*Id.* at 19). Lastly, defendant argues remand is not warranted for the ALJ to consider whether plaintiff was disabled during a closed period from 2013 to 2015. (*Id*. at 23).

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human*

*Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A. State agency review psychologist Dr. Echevarria

In connection with plaintiff's 2012 application for benefits, state agency review psychologist J. Echevarria rendered an opinion. Completed on April 12, 2012, the Mental Residual Functional Capacity Assessment found either no limitations or only moderate limitations in twenty domains of functioning. (Tr. 278-281). ALJ Georger considered this opinion and accorded it great weight. (Tr. 25). Plaintiff argues the ALJ should not have afforded any weight to the opinion because it was prior to the alleged onset date and did not take subsequent records into account. (Dkt. No. 12 at 15). However, a medical opinion need not be rejected or ignored solely because it predates the relevant time period, particularly where the record otherwise contains limited

information regarding the claimant's functional capabilities. *Thomas v. Comm'r of Soc. Sec.*, No. 1:18-CV-00839(JJM), 2020 WL 548394, at *3 (W.D.N.Y. Feb. 4, 2020) quoting *Pugh v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 305, 315 (W.D.N.Y. 2018). Therefore, the ALJ was permitted to consider it and the next issue is whether assigning it great weight was appropriate.

It is fundamental law that a state agency consultant opinion may be given great weight if well-supported by the record. *See Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015) ("State agency medical and psychological consultants…are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluations."); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State Agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."). In this case, although issued prior to the alleged onset date, the opinion was well-supported and consistent with later evidence. Dr. Echevarria noted plaintiff had a long treatment history for mental impairments and that her mental symptoms were generally controlled with medication. (Tr. 277). The ALJ appropriately noted the conclusion by Dr. Echevarria was consistent with subsequent treatment records and plaintiff's testimony. (Tr. 25). Indeed, the ALJ discussed treatment records from Chautauqua County Department of Mental Hygiene dated from 2015 to 2018, which demonstrated plaintiff was calm and cooperative, showed good eye contact, had normal speech, had no delusions or paranoid thoughts, displayed good grooming, and had an intact memory, fair attention and concentration, and improving insight and judgment when compliant with medication. (Tr. 23, *referring to* Tr. 556, 563-564, 873-874, 876-878). The ALJ acknowledged that plaintiff was briefly hospitalized in 2013 and 2015, but noted these hospitalizations occurred when plaintiff was non-compliant with her medications. ( Tr. 22, 24, *referring to* Tr. 294, 339, 403 (July 2015 and August 2015 hospitalizations); *see* Tr. 428 (referring

to six-day hospitalization in November 2013)). The ALJ additionally noted plaintiff's numerous self-reports of improvement in her symptoms when she consistently takes her medications. (Tr. 23-24, *referring to, e.g.,* Tr. 191, 518, 532, 546, 880). Therefore, the opinion was consistent with subsequent evidence, including episodes of decompensation from non-compliance with medications.

Dr. Echevarria's opinion was also consistent with the opinion of physician assistant (PA) Alicia Snow. Defendant appropriately argues the outcome of the case would not have changed if the ALJ had not considered Dr. Echevarria's opinion because PA Snow found similar moderate limitations which were consistent with the treatment notes and plaintiff's reported activities. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles in the record could only lead to the same conclusions, there is no need to require agency reconsideration."); *Grega v. Saul*, 816 F. App'x 580, 582-83 (2d Cir. 2020) (same).

### B. Physician Assistant Alicia Snow

As stated above, the record also contained an opinion from PA Alicia Snow. On August 7, 2017, physician assistant Alicia Snow completed an Employment Assessment finding plaintiff had moderate limitations in understanding and remembering instructions, maintaining attention and concentration, and being able to function in a work setting at a consistent basis. (Tr. 848). She indicated plaintiff was doing well now, but her limitations may change in the future. (Tr. 848). The ALJ acknowledged the treating relationship and afforded PA Snow's opinion great weight. (Tr. 25). Plaintiff argues the ALJ improperly weighed the opinion because PA Snow did not start treating plaintiff until December 2015, which is well after the November 5, 2013 alleged onset date, and did not account for the "cycles of improvement". (Dkt. No. 12 at 16).

As noted by plaintiff, PA Snow is not an acceptable medical source as defined by the Regulations. *See* 20 C.F.R. §§ 404.1502(a)(8); 416.902(a)(8) (providing that licensed physician assistants are only considered acceptable medical sources with respect to claims filed on or after March 27, 2017). Social Security Ruling (SSR) 06-03 provides opinions from medical sources, who are not technically deemed "acceptable medical sources" under the rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06–03p; Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 71 Fed. Reg. 45593 (Aug. 9, 2006) (hereafter SSR 06–03).

In accordance with the regulations, the ALJ appropriately weighed PA Snow's opinion using the factors listed at 20 C.F.R. §§ 404.1527(c), 416.927(c), including consistency with the overall record, length and nature of the treatment relationship. Although discussed in a different part of the decision, the ALJ thoroughly referenced the treatment records dating from the onset date through 2018, including PA Snow's own normal mental status findings when plaintiff was stable on medications. (Tr. 23-24, *referring to* Tr. 556, 563-564, 873-874, 876-878). The ALJ also discussed plaintiff's part-time work activity and volunteer activity, as well as her many reports of improvement in symptoms when consistently taking her medications. (Tr. 18, 21, 25, *referring to* 40, 43, 514, 531, 540, 574 (evidence of work activity and volunteer activity), 191-200, 518, 532, 546, 880 (evidence of improvement in symptoms with regular medication)). Although the ALJ did not cite in the same paragraph allocating weight, the evidence supporting his conclusion that PA Snow's opinion was consistent with the overall record, a review of the decision as a whole shows the ALJ cited evidence to support the weight given to PA Snow's findings. *See Salmini v. Comm'r*

*of Soc. Sec.*, 371 F.App'x 109, 112-113 (2d Cir. 2010) (Court can look to other parts of an ALJ's decision in concluding that individual findings are supported).

Although PA Snow did not start treating plaintiff until almost two years after her alleged onset date, she consistently treated plaintiff for two and a half years during the period at issue and documented her 11-year psychiatric history and recent hospitalizations. (Tr. 546-547). PA Snow's opinion was consistent with her treatment notes showing mostly normal mental status findings and improved functioning with medication. *See* Tr. 23-24, *referring to, e.g.,* Tr. 191, 518, 532, 546, 880 (reports of improvement with medication), 40, 43, 51-54, 175, 191-200 (evidence of work activity, volunteer activity and other daily activities). There were no opinions in the record that support greater limitations and plaintiff has failed to show that a reasonable factfinder could not have reached the same conclusions as the ALJ in weighing PA Snow's opinion. *See Brault*, 683 F.3d at 448. Accordingly, plaintiff has not met her burden of proving that the ALJ erred in assigning great weight to PA Snow's opinion.

### C. Duty to Develop

Plaintiff argues the ALJ failed to develop the record because of missing case notes from mental health counselor Ms. Jennifer Wolfe and an x-ray report related to osteoporosis. (Dkt. No. 12 at 19). Where the evidence is already adequate for the ALJ to make a determination as to disability, the ALJ has no obligation to further develop the record. *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996); *see also Rosa v. Callahan*, 168 F.3d 72, 29 n. 5 (2d Cir. 1999) ("Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."); 20 C.F.R. §§ 404.1520b(a), 416.920(b)(a) (if there is sufficient

evidence for the ALJ to determine whether a claimant is disabled, the ALJ will make his decision based on that evidence).

Ms. Wolfe began treating plaintiff about six months prior to the hearing. (Tr. 880). As discussed, the record contained several years worth of treatment notes from mental health providers, hospitals, state agency psychological consultants and a treating source opinion from a physician assistant. At the June 2018 hearing, plaintiff testified she had just started seeing Ms. Wolfe and the frequency was only once every three months. (Tr. 48). Contrary to plaintiff's argument, the record actually contains counseling notes from Jennifer Wolfe dated December 2017 and March 2018, both of which state that plaintiff was requesting to discontinue therapy and remain on a medication-only treatment plan. (Tr. 880, 882). Plaintiff did not request additional time to file any mental health records. There is no evidence of a gap in the record pertaining to the mental health treatment records.

At the hearing, plaintiff also testified she had recent x-rays which revealed early osteoporosis. (Tr. 45). Plaintiff did not allege leg pain in her application and there are no medical records showing any treatment for leg pain. (Tr. 72-78, 463-498, *see generally* Tr. 727-780). Regardless, the ALJ elicited testimony regarding the frequency, intensity, and treatment of the leg pain, which satisfied his duty. (Tr. 45-46). *See* 20 C.F.R. §§ 404.1520b(b)(2)(iv), 416.920(b)(2)(iv) (the ALJ may develop the record by asking the claimant for more information about her impairment(s)). Plaintiff testified the pain did not interfere with her sleep and that she only took Ibuprofen when it hurt. (Tr. 45-46). The x-ray report, with bare medical findings, was not deemed necessary by the ALJ and the report did not constitute a gap in the record.

Plaintiff also asserts the ALJ should have sought additional opinion evidence. (Dkt. No. 12 at 18-19). This argument is disingenuous as the previous argument by plaintiff was the opinion

from PA Snow for the relevant period should not have been given great weight based on treatment for only two and a half years of the period at issue. Plaintiff argues that the record contains no opinion spanning the entire period at issue, but there has not been one treating source for the entirety of the period. Further, PA Snow was familiar with the plaintiff's longitudinal history when rendering her opinion.

Regardless, an ALJ need not rely on any medical opinion at all, if the record is sufficient for the ALJ to assess a claimant's residual functional capacity. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 33 (2d Cir. 2013) (holding that remand was not required where an ALJ had not requested medical opinions from treating providers but the record was adequate to permit an informed residual functional capacity finding by the ALJ); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x. 5, 8-9 (finding that where the record contains sufficient evidence from which an ALJ can assess a claimant's residual functional capacity, "a medical source statement or formal medical opinion is not necessarily required."). The Regulations also make it clear that a consultative examination or medical expert is at the ALJ's discretion. *See* 20 C.F.R. §§ 404.1519(b); 416.919(b) (providing that an ALJ *may* order a consultative examination if necessary to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to make a determination on the claim); 20 C.F.R. §§ 404.1513a(b)(2), 416.913a(b)(2) ("Administrative law judges *may* also ask for medical evidence from expert medical sources.") (emphasis added). The ALJ had no obligation to further develop the record as it was sufficiently developed as to plaintiff's impairments, symptoms, and functional limitations.

### D. Closed Period

Plaintiff asserts the ALJ erred by failing to consider a closed period from 2013 through 2015. (Dkt. No. 12 at 20). However, plaintiff did not request a closed period of disability at any

point during the administrative proceedings and is precluded from raising the issue before this Court. *See Ghio v. Astrue*, 10-cv-62, 2011 WL 923419, at *19 (D.Vt. Mar. 1, 2011) ("Given [the plaintiff's] failure to raise this issue before the ALJ, and failure to amend her claim to request a closed period of disability, the Court need not consider it."); *Wenner o/b/o A.R.L.D. v. Comm'r of Soc. Sec.*, 18-cv-826-JJM, 2019 WL 7288507 at *8 n. 6 (W.D.N.Y. Dec. 30, 2019) (noting that the plaintiff had not alleged a closed period of disability before the ALJ and favorably citing *Ghio*, 2011 WL 923419 at *19). There are no Regulations which require an ALJ to consider a closed period of disability. The medical improvement review standard cited by plaintiff only applies to continuing disability reviews. 20 C.F.R. §§ 404.1594 and 416.994. The ALJ appropriately considered the entire period at issue and did not find plaintiff was disabled at any point from November 15, 2013 through the date of the decision. (Tr. 27).

Plaintiff also argues that for the period of 2013 to 2015, the ALJ did not properly consider listing 12.04(C) because plaintiff "was living at STEL with a counseler assigned to distribute her medications." (Dkt. No. 12 at 21). Plaintiff testified she was still living in a Southern Tier Environments for Living, Inc. apartment at the time of the hearing in 2018. (Tr. 59). Evidence of record does not indicate the STEL housing satisfies the requirements of a "highly structured setting" for 12.04(C) purposes. *See* 20 C.F.R. Pt. 404, Subpt. P, Ap. 1, 12.04(D)(2)(a-b) ("Psychosocial rehabilitation programs are based on your specific needs. Therefore, we cannot make any assumptions about your mental disorder based solely on the fact that you are associated with such a program. We must know the details of the program(s) in which you are involved and the pattern(s) of your involvement over time.").

Plaintiff testified she did her own cooking, performed household chores, went shopping for groceries, and worked part-time as a restaurant server, all while residing in STEL housing. (Tr. 43,

53; see also Tr. 191-194 (Function Report, documenting similar activities)). The ALJ additionally cited plaintiff's 2018 testimony that she "has been volunteering at Community Helping Hands working at a depot-clothing store helping people in need, for the last six years." (Tr. 21, *referring to* Tr. 43). Plaintiff's daily activities and degree of independence while living in STEL housing demonstrate that she was not receiving a high degree of care in managing her day-to-day life while at STEL. Plaintiff's residency in STEL housing therefore does not qualify as a "highly structured setting" under 12.04(C)(1), either from 2013 to 2015, or at any time prior to the date of the ALJ's decision. Although there were brief periods of decompensation requiring hospitalization, they were induced by medication non-compliance and the ALJ properly considered the entire period at issue when reasonably concluding plaintiff was not disabled at any point during the period.

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is

**GRANTED**.

Dated: February 26, 2021
Rochester, New York

*J. Gregory Wehrman*
HON. J. Gregory Wehrman
United States Magistrate Judge